**AFFIRM; and Opinion Filed April 26, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-15-00011-CR
No. 05-15-00012-CR
No. 05-15-00013-CR

**BERNARD JEROME COY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F-1253722-W, F-1470104-W, F-1470105-W**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Schenck
Opinion by Justice Lang-Miers

Appellant Bernard Jerome Coy appeals the trial court's denial of his motions for speedy trial in three cases. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm.

### BACKGROUND

Appellant filed motions for speedy trial in three different cases involving charges for possession of a controlled substance arising from two separate incidents. Because the circumstances surrounding these cases are different, we present and analyze the cases separately. We refer to the case arising from the first incident as the "F12 felony drug case" or "F12 case,"

which reflects its district court case number, F-1253722-W. We refer to the two cases arising from the second incident as the "F14 felony drug cases" or "F14 cases," again reflecting the case numbers for the two cases, F-1470104-W and F-1470105-W.

**F12 Felony Drug Case**

Appellant was arrested on March 25, 2012 for felony possession of a controlled substance and two misdemeanor offenses. The following day, appellant was arraigned on the felony and released on bond. In October 2013, a laboratory reported the test results of the pills seized from appellant at the time of the arrest. On January 14, 2014, appellant was indicted for felony possession of a controlled substance in cause number F-1253722-W. The first trial setting was February 11, 2014. The record contains pass slips, each agreed to by appellant and his attorney, resetting the case for the following dates: (1) February 28, 2014, (2) March 17, 2014, (3) April 14, 2014, (4) April 22, 2014, (5) May 20, 2014, (6) May 23, 2014, (7) June 6, 2014, (8) June 23, 2014, (9) July 15, 2014, (10) August 12, 2014, (11) October 17, 2014, and (12) December 5, 2014.[1] The pass slip on March 17, 2014 resetting the case to April 14, 2014 included the handwritten notation "Asserting Speedy Trial Right—Mata" and the pass slips resetting the case to April 22, 2014, May 20, 2014, May 23, 2014, and June 6, 2014 indicated that the reason for the resetting was "Other" and included the handwritten notations "Speedy Trial[,]" "Speedy trial hearing[,]" and "Awaiting Ruling on speedy trial[.]"[2]

**F14 Felony Drug Cases**

On April 21, 2012—a month after appellant's arrest in the F12 case—appellant was arrested for two misdemeanor charges of evading arrest and failure to identify. He was released on bond for those two misdemeanor charges. While conducting a search incident to that

---

[1] The last three pass slips indicate that they were passed for plea.

[2] Angel Mata was appellant's counsel. Four other attorneys were also identified as appellant's counsel at various times below.

misdemeanor arrest, police officers found several pills in appellant's right pants pocket. The officers could not determine what the pills contained and sent the pills to a laboratory for further testing.

On January 2, 2014, police received a laboratory report that identified the pills' contents as two controlled substances. On January 14, 2014, warrants were issued for appellant's arrest for two felony drug offenses arising from his possession of the controlled substances. On February 28, 2014, appellant was arrested and arraigned for those two felony offenses and then was released on bond.[3]

**Motions for Speedy Trial and Findings of Fact and Conclusions of Law**

On April 23, 2014, appellant filed motions for speedy trial in the F12 case and in each of the F14 cases. In the motion for speedy trial in the F14 cases, appellant stated that he "was initially arrested on April 21, 2012 and then later arrested on February 28, 2014 for a crime which allegedly occurred on April 21, 2012" and that "[t]hese causes have not been filed or indicted by the State and trial has not yet been scheduled." Appellant argued that he was being prejudiced by the State's delay because defense witnesses were becoming unavailable and would forget facts that would be beneficial to him.

On May 25, 2014, the trial court conducted a hearing concerning appellant's motions for speedy trial. The court took the motions under advisement and then denied them and issued findings of fact and conclusions of law. The findings and conclusions read in relevant part:

> Defendant spent no []more than []a day in jail in any of the cases before making bond.
>
> . . . .

---

[3] Although appellant had not been indicted in the two F14 felony drug cases and no trial date had been set, appellant obtained case numbers for the two F14 felony drug cases and listed those on numerous pass slips filed in the F12 case, including the pass slips that had handwritten notations concerning "speedy trial."

–3–

At the hearing the reasons advanced by the district attorney for the delay in filing the cases was [sic] that there had been a backlog in the drug testing procedures. In the F-14 cases it is not clear that these cases have ever been filed with the district attorney. The defendant was likely released on a warrant issued by a magistrate at the instance of the Dallas police department.

No evidence[] was presented showing why there was any other reason for the delay in filing and indicting the F 12 case or in the arrest of the defendant in the F 14 cases.

The defendant testified that [he] had suffered anxiety over the fact that he had been arrested and had not been indicted for the cases. He testified to a difficulty in getting employment although he had been unemployed and there was no evidence that any employer had refused him employment as a result of the arrests.

He did not testify to the existence of any witnesses whose testimony he had lost because of the delay or to any efforts to locate the[m]. Counsel did provide information from the probable cause affidavits in the cases that an anonymous caller had called police on the F 12 case and that there had been a witness named Crowder on the F 14 cases.

I am prepared to find and conclude that:

1. The delay in filing or indicting these cases is presumably harmful and triggers the Barker v. Wingo factors.

2. The reasons for the delay are not intentional or negligent and are slightly weighted against the state.

3. The Defendant filed his Motions in a timely manner, which factor is weighted in the defendant's favor, although mitigated by the fact that he seeks a dismissal rather than a speedy trial.

4. The prejudice is slight based on the evidence: no showing of lost witnesses, no other prejudicial result such as job loss or income loss or physical impairment. Anxiety about the . . . [p]ending case beyond that normally suffered by a defendant was scarcely shown.

[5.] In the F 14 cases which may not even have been filed the Defendant has not shown the delay has substantially prejudiced the defendant and or was intentional by the state.

[6.] The prejudice for not providing a speedy trial—pre-trial incarceration, minimizing anxiety to the defendant and possible impairment of the defense weigh[] in favor of the defendant slightly since there was no pre-trial incarceration, minimal anxiety due to the delay and no showing [of] an impaired defense.

–4–

[7.] On the F 14 cases, which have not been indicted the Defendant has not shown a sixth amendment violation.

[8.] Based on balancing the factors and the evidence the Defendant's speedy trial motions will be denied.

Pursuant to a plea agreement, appellant pleaded guilty on October 31, 2014 to the felony drug possession charges in the F12 case and the two F14 cases. The trial court deferred adjudicating guilt and placed appellant on two years' community supervision and probated his $2,000 fine in the F12 case.[4] Appellant then brought this appeal.

## APPLICABLE LAW

Both the Sixth Amendment to the United States Constitution and article 1, section 10 of the Texas Constitution guarantee a speedy trial.[5] *See* U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10; *Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002). A speedy trial mitigates the concern and anxiety accompanying public accusation and protects a defendant from impairment to his defense and oppressive pretrial incarceration. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). "The right attaches once a person becomes an 'accused'—that is, once he is arrested or charged." *Id.*; *see United States v. MacDonald*, 456 U.S. 1, 6 (1982) (stating speedy trial clause applies "when a formal criminal charge is instituted and a criminal prosecution begins").

While the Texas Constitution provides an independent speedy trial guarantee, the Texas Court of Criminal Appeals has traditionally analyzed speedy trial claims under the same framework established by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530–33 (1972). *See Zamorano*, 84 S.W.3d at 647–48. That framework requires us to consider

---

[4] The trial court did not assess a fine in the F14 cases.

[5] Section 1.05 of the code of criminal procedure also provides that the accused shall have a speedy trial. *See* TEX. CODE CRIM. PROC. ANN. art. 1.05 (West 2005).

four factors: (1) the length of the delay, (2) the reasons for the delay, (3) the assertion of the right, and (4) the prejudice to the defendant. *Barker*, 407 U.S. at 530. No single factor is sufficient or necessary to establish a violation of the right to a speedy trial, although the length of the delay is a "triggering mechanism" for analysis of the other factors. *Id.* at 530, 533. The court of criminal appeals has held that a seventeen-month delay is "presumptively prejudicial" and a four-month delay is not. *Cantu*, 253 S.W.3d at 281. If the delay is "presumptively prejudicial," the State bears the burden of justifying the delay and the defendant has the burden to prove that he asserted the right and that he suffered prejudice because of the delay. *Id.* at 280. The defendant's burden of proof "varies inversely" with the State's degree of culpability for the delay: the less culpability the State has for the trial delay, the more a defendant must show actual prejudice or prove diligence in asserting his speedy trial right. *Id.* at 280–81 (quoting *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993)). In evaluating a speedy trial claim, we balance the defendant's conduct against the State's conduct and consider the four factors together, along with any other relevant circumstances. *Barker*, 407 U.S. at 530, 533.

We review a trial court's ruling in light of the arguments, information, and evidence available to the trial court at the time it ruled. *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). We apply a bifurcated standard of review to the trial court's ruling: "an abuse of discretion standard for the factual components, and a *de novo* standard for the legal components." *Zamorano*, 84 S.W.3d at 648. The "standard for evaluating factual issues within the context of a speedy trial claim is the same as the standard for reviewing historical fact issues in the context of a motion to suppress." *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005). Applying this standard, "deference must be given not only to a trial court's resolution of disputed facts, but also to the drawing of reasonable inferences from the facts." *Id.* The

–6–

balancing test applied to a speedy trial analysis as a whole is a legal question. *Cantu*, 253 S.W.3d at 282.

**ANALYSIS**

**F12 Felony Drug Case**

### 1. *Length of the Delay*

Appellant was arrested on March 25, 2012—the same day as the alleged offense—on the felony drug charge in the F12 case. He was indicted for the offense on January 24, 2014 and the case was set for trial on February 11, 2014. The State concedes that the "trial court correctly concluded this delay was presumptively harmful, and it triggered an analysis under the other *Barker* factors."

### 2. *Reasons for the Delay*

In analyzing and balancing the reasons for the delay, different weights are assigned to different reasons.

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531 (internal footnote omitted); *see State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999).

The trial court found that: (1) "[a]t the hearing the reasons advanced by the district attorney for the delay in filing the cases was [sic] that there had been a backlog in the drug testing procedures" and (2) "[n]o evidence[] was presented showing why there was any other reason for the delay in filing and indicting the F 12 case[.]" The trial court concluded that the "reasons for the delay are not intentional or negligent and are slightly weighted against the state."

Appellant argues the Court should weigh this factor more heavily against the State because the State did not provide any evidence—and only submitted argument—supporting its explanation that the delay resulted from a backlog at the testing laboratory and did not explain why there was a delay, the typical delay time, and whether alternative laboratories were available for testing. In addition, appellant argues that—unlike a crowded docket—the State "presumably . . . has control over" the "backlog at a 'lab,'" and "presumably the State could send the drugs to another lab to get the results back in a timelier manner." Additionally, appellant argues that the State also delayed "three months" after it received the test results before indicting appellant.

The State argues that this Court must defer to the trial court's finding of fact that the only reason shown for the delay was "a backlog in the drug testing procedures" and argues that, because there is no evidence that the State deliberately delayed for strategic gain, this Court should agree with the trial court that this factor weighs only slightly against the State.

The record does not contain evidence explaining why the lab report was issued over nineteen months after appellant's arrest in the F12 case. But there is no evidence that the State deliberately delayed the process for strategic gain. *See Hardesty v. State*, 738 S.W.2d 9, 11 (Tex. App.—Dallas 1987, pet. ref'd) (stating "a court's overcrowded docket should be weighted less heavily against the government than, for instance, a prosecutor's deliberate delay"). We must give deference to the trial court's resolution of disputed facts and also the reasonable inferences the trial court made from the facts. *See Kelly*, 163 S.W.3d at 726. As a result, we conclude the second *Barker* factor weighs only slightly against the State. *See also Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003) (stating "a crowded court docket is not a valid reason for delay and must be counted against the State, although not heavily").

### 3. Appellant's Assertion of His Right to a Speedy Trial

Appellant argues that the trial court correctly found and concluded that he had timely asserted his right to a speedy trial, but incorrectly concluded that his "seeking dismissal rather than a speedy trial" "mitigated" the "weight[]" of this factor in his favor.[6] He argues that his "requested dismissal in his prayer" in his motion "should not be assessed against him." The State contends that appellant's "silence during the period between his arrest and his assertion of the speedy trial right" indicates "that Appellant was not, in reality, asserting his right to a speedy trial, but rather wanted only a dismissal."

The record supports the trial court's conclusion. "[A] defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his [speedy trial] claim." *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. [Panel Op.] 1983); *see Bailey v. State*, 885 S.W.2d 193, 201–02 (Tex. App.—Dallas 1994, pet. ref'd).

### 4. Prejudice to Appellant Resulting from Delay

We analyze the prejudice to the accused in light of the three interests the speedy trial right was designed to protect: "(1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired." *Cantu*, 253 S.W.3d at 285. Of these three interests, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. Here, the trial court concluded that the prejudice from not providing a speedy trial "weigh[s] in favor of the defendant slightly since there was no pre-trial incarceration, minimal anxiety due to the delay and no showing [of] an impaired defense."

---

[6] Appellant requested a speedy trial or dismissal.

### a. To Prevent Oppressive Pretrial Incarceration

The trial court found that appellant "spent no []more than []a day in jail in any of the cases before making bond" and concluded that "there was no pre-trial incarceration[.]" Appellant argues that he "cited several sources of anxiety involving pretrial incarceration including a total of four arrest[s], police going to his parents' house to arrest him and constant fear of being rearrested." We conclude that the record supports the trial court's conclusion.[7]

### b. To Minimize Anxiety and Concern of the Accused

The trial court found that appellant "testified that [he] had suffered anxiety over the fact that he had been arrested and had not been indicted for the cases" and "testified to a difficulty in getting employment although he had been unemployed and there was no evidence that any employer had refused him employment as a result of the arrests." The court concluded that "[a]nxiety about the [p]ending case beyond that normally suffered by a defendant was scarcely shown" and there was "minimal anxiety due to the delay[.]"

Appellant argues that the trial court erred in these conclusions. And the State argues that "[n]otwithstanding these bare suggestions of general feelings of" lost employment opportunities and anxiety, the findings and conclusions of the trial court are "amply supported" by the record.

During the hearing on his motions for speedy trial, appellant testified that he had been "going to court" on the misdemeanor offenses "pending out of these same offenses" for "more than two years" "[a]pproximately 33 times[.]" He testified that he had not "plead[ed] out those misdemeanors" because his "former attorney told [him] that felonies were still pending" and he was waiting on indictments in those felonies. He also testified that, because he was out on bond in these cases, he had met with his bondsman about 116 times. He testified that he had missed

---

[7] Appellant contends that, in *Phillips v. State*, 650 S.W.2d at 402, "the accused was not arrested pre-indictment and did not learn of the indictment until over a year later" but the court "still found prejudice." *Phillips* is distinguishable: it concerned a defendant who was in federal custody for a separate charge when he was indicted and the court considered "the significant obstacles" that a "person already incarcerated faces" when "confronted by new charges." *Id.* at 398–99, 402.

–10–

work to attend court settings. His father and sometimes his mother attended with him, and they also missed work. He testified that he currently had a job that he had held for about a month, but that from the time of the initial offense until about a month before the hearing, he had been looking for employment. When asked why he could not find employment during those two years, he replied that it was "[b]ecause all these cases pending on [his] background." Appellant also testified that he learned that there were warrants out for his arrest earlier in 2014 and that police came to his parents' home more than once to serve the warrants on him, even though the police could have found him at one of his regular appearances at court. He testified that the police "were mad" and the situation caused "stress" and "monetary issues" to his family and "it was just very hectic." On appeal, appellant argues that his testimony supports his claims that he suffered anxiety and stress.

But the record does not include any evidence that the delay caused him anxiety beyond that normally associated with being arrested for possession of illegal drugs. *See Shaw*, 117 S.W.3d at 890–91 (concluding trial court could have reasonably determined that appellant did not demonstrate prejudice because appellant did not offer any evidence of unusual anxiety). He testified, "[I]t's really been hard on me. For one, I haven't been able to find a job. And that's really pretty much it." And he testified that the "pending drug cases" made it difficult for him to find employment. But he also testified on cross-examination that he did not have a job and was seeking employment at the time of the March 25, 2012 arrest. He testified that "it was" and "[s]till is currently hard to get a job . . . [r]egardless whether you have been arrested for anything or not[.]" He also testified that he did not know if employers could see the drug charges on his record and that he could not testify that the reason that he was not being hired was because he "ha[d] these charges." He testified that he did not know why he was "getting rejected" but

–11–

assumed that it was because of the drug charges against him. We conclude that the record supports the trial court's conclusion.

### c. To Limit the Possibility that the Defense Will Be Impaired

Appellant stated in his motions for speedy trial that he was "being prejudiced by the State's delay because defense witnesses are becoming unavailable and such witnesses as remain will have forgotten facts that would be beneficial to the Defendant." Appellant states the affidavit for arrest provided evidence that "there was an unknown 911 caller . . . that the Appellant was not aware of[.]" Citing *Phillips*, 650 S.W.2d at 402, appellant also argues that it is not necessary for him to show that the witness would have testified favorably for him. But *Phillips* was different from this case. The court concluded that the appellant was prejudiced because a potential witness—a co-defendant—died before the appellant learned of the indictment. *Id.* at 402–03. Here, appellant did not present evidence about his efforts to locate any witness, what any witness' testimony would have been, or why it would have been relevant and material to appellant's defense.

As the trial court stated, appellant "did not testify to the existence of any witnesses whose testimony he had lost because of the delay or to any efforts to locate the[m]." *See Phipps v. State*, 630 S.W.2d 942, 947 (Tex. Crim. App. [Panel Op.] 1982) (stating appellant must demonstrate that missing witnesses' testimony "might be material and relevant to his case" and that appellant has "shown diligence in procuring the witnesses"). Consequently, we conclude that the impact on this interest does not weigh in favor of appellant.

In summary, after weighing and balancing the *Barker* factors, we conclude that the record does not demonstrate that appellant's right to a speedy trial was violated in the F12 case and the trial court did not err by denying his motion for speedy trial in the F12 case.

–12–

**F14 Felony Drug Cases**

Appellant states that "[h]is right" to a speedy trial "attached in the F14 causes when he was arrested and arraigned" on February 28, 2014.[8] He filed his motion for speedy trial on April 23, 2014 and, on May 25, 2014, the trial court held a hearing on the motion.

We conclude that this delay is not presumptively prejudicial and that appellant's right to a speedy trial was not abridged. *See Cantu*, 253 S.W.3d at 281; *Pete v. State*, 501 S.W.2d 683, 687 (Tex. Crim. App. 1973) (concluding four month period between issuance of bench warrant and trial was "short period of time" that "in no way [could] be construed as 'presumptively prejudicial'" and defendant's constitutional right to a speedy trial was not abridged).[9] Consequently, we conclude that the trial court did not err in denying appellant's motion for speedy trial in the F14 cases.

**CONCLUSION**

We resolve appellant's issues against him and affirm.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)

150011F.U05

---

[8] Appellant states that his right to a speedy trial in the F14 cases "attached" "when he was arrested and arraigned on April 28, 2014." The record establishes that he was arrested and arraigned on February 28, 2014.

[9] Pre-arrest delay is not considered in evaluating whether the right to a speedy trial has been violated. *See United States v. Lovasco*, 431 U.S. 783, 788–89 (1977); *United States v. Marion*, 404 U.S. 307, 321–22 (1971).

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BERNARD JEROME COY, Appellant

No. 05-15-00011-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1253722-W.
Opinion delivered by Justice Lang-Miers,
Justices Bridges and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of April, 2016.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BERNARD JEROME COY, Appellant

No. 05-15-00012-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1470104-W.
Opinion delivered by Justice Lang-Miers,
Justices Bridges and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of April, 2016.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BERNARD JEROME COY, Appellant

No. 05-15-00013-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1470105-W.
Opinion delivered by Justice Lang-Miers, Justices Bridges and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of April, 2016.